IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| CHEDOWRY THOMAS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | EP-13-CV-298-KC |
| | § | EP-09-CR-2453-KC-5 |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

## ORDER

On this day, the Court considered Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "Motion"),[1] ECF No. 337.[2] By the Motion, Petitioner challenges his criminal sentence on the ground that he received ineffective assistance of counsel. *See id.* Also before the Court is Petitioner's motion to amend the Motion pursuant to Federal Rule of Civil Procedure 15 (the "Motion to Amend"), ECF No. 377. By the Motion to Amend, Petitioner requests that the Court grant him leave to raise an additional ineffective assistance of counsel claim. *Id.* at 1-4. For the following reasons, the Court **DENIES** the Motion and **DENIES** the Motion to Amend.

## I.    BACKGROUND

On September 2, 2009, a grand jury charged Petitioner with conspiracy to possess five kilograms or more of cocaine with intent to distribute, and possession of five kilograms or more of cocaine intent to distribute, in violation of 21 U.S.C. §§ 841(a) and 846. *See* Original

---

[1] The Court refers to the pagination assigned to the Motion by the Court's electronic docketing system, rather than to the internal pagination assigned by Petitioner.

[2] For the purposes of this Order, all docket entries refer to the criminal case EP-09-CR-2453-KC (the "Case").

Indictment, ECF No. 25, at 1-2, 4. *See also* 21 U.S.C. § 841(a) (criminalizing the possession of a controlled substance); *id.* § 846 (providing that a person who conspires to commit a violation of 21 U.S.C. § 841(a) shall be subject to the same penalties as one who actually commits a violation of 21 U.S.C. § 841(a)). On April 7, 2010, the Court appointed an attorney ("Trial Counsel") to represent Petitioner in the Case. *See* ECF Nos. 145, 146.

On May 26, 2010, a grand jury charged Petitioner in a superseding indictment (the "Superseding Indictment"), ECF No. 161, with conspiracy to possess five or more kilograms of cocaine with intent to distribute, and attempted possession of five or more kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a) and 846. *See* Superseding Indictment 1-2.

The Court held a jury trial of Petitioner, along with three of his co-defendants, on June 4-10, 2010. *See* ECF Nos. 182, 188, 198, 201, 205. At trial, the Government presented evidence that, beginning in March 2008, Victor Jimenez ("Jimenez") began working with the Drug Enforcement Administration ("DEA") as a confidential source to assist the DEA's investigation of an El Paso resident suspected of cocaine and marijuana distribution. *See United States v. Thomas*, 690 F.3d 358, 364 (5th Cir. 2012). To facilitate the investigation, Jimenez agreed to transport fifteen kilograms of cocaine from Texas to Missouri. *See id.* On November 25, 2008, Jimenez arrived at a truck stop known as the Cheers Travel Center with a duffel bag full of sham cocaine. *See id.* at 365.

The Government presented evidence that Petitioner was present with his co-defendant Henry Davis ("Davis") at the Cheers Travel Center on November 25, 2008, to facilitate the drug deal. *See id.* at 367. Specifically, the jury heard evidence that Petitioner parked his Cadillac "next to [Davis's] van for at least half an hour as the parties waited for the drugs to be placed in the

2

van, followed the van with the sham cocaine out of the truck stop parking lot, and then traveled

with the van." *See id*. The Government also presented evidence from which the jury could infer

that Petitioner "directed Jimenez to retrieve the money" in exchange for the cocaine. *See id*. The

jury also heard evidence that, after Davis's van "flipped off the road" during a high-speed chase

with the police, Petitioner stopped his own vehicle "only long enough for Davis to get into the

Cadillac" and "then continued driving" after "[Petitioner] and Davis abandoned the van on the

side of the road." *See id*. at 368 (5th Cir. 2012); *accord* Trial Tr. 187-88, June 7, 2010, ECF No.

315.

On June 10, 2010, the jury unanimously found Petitioner guilty of conspiracy to possess a

controlled substance with intent to distribute. Jury Verdict, ECF No. 210, at 1. The jury

specifically found that the conspiracy involved five kilograms or more of a mixture or substance

containing a detectable amount of cocaine. *Id*. The jury also unanimously found Petitioner guilty

of attempted possession of a controlled substance with intent to distribute, and specifically found

that the attempt involved five kilograms or more of a mixture or substance containing a

detectable amount of cocaine. *Id*. at 2.

Prior to Petitioner's sentencing, a United States Probation Officer prepared a presentence

investigation report (the "PSR"), ECF No. 244,[3] in the Case. The PSR recommended that the

Court hold Petitioner responsible for a total of fifteen kilograms of cocaine when calculating

Petitioner's guideline sentence. *See* PSR ¶¶ 11-13, 18, 23, 28, 31.

The Court held a sentencing hearing in the Case on September 30, 2010. *See* ECF No.

250; Sentencing Hr'g Tr., Sept. 30, 2010, ECF No. 308. The Court sentenced Petitioner to a term

---

[3] The Court refers to the pagination assigned the PSR by the Court's electronic docketing system, rather than to the internal pagination assigned by the United States Probation Officer.

of 135 months' imprisonment on the conspiracy count and 135 months' imprisonment on the

attempt count, to be served concurrently. *See* J. & Commitment, ECF No. 253, at 2. The Court

also imposed a five year term of supervised release, a $100.00 assessment on each count, and a

$2,000.00 fine. *See id.* at 3-6. In doing so, the Court imposed a sentence consonant with the

PSR's recommendation that Petitioner be held responsible for a total of fifteen kilograms of

cocaine. *See* Sentencing Hr'g Tr. 5-6, 12.

On October 13, 2010, Trial Counsel filed a Notice of Appeal on Petitioner's behalf. *See*

ECF No. 257. On the same day, Trial Counsel moved to withdraw as counsel, and moved the

court to appoint appellate counsel for Petitioner. *See* ECF No. 256. The Court permitted Trial

Counsel to withdraw on October 14, 2010. On October 18, 2010, the Court appointed John

Williams ("Appellate Counsel") to represent Petitioner on appeal. *See* ECF No. 271, at 2; ECF

No. 272.

On August 2, 2012, the United States Court of Appeals for the Fifth Circuit affirmed this

Court's judgment in part and reversed it in part. *See Thomas*, 690 F.3d at 364-76. The Fifth

Circuit affirmed Petitioner's conviction and sentence on the conspiracy count in its entirety. *See*

*id.* at 367-68, 369, 373-74, 376. Specifically, the Fifth Circuit ruled that the evidence presented

at trial was sufficient to find Petitioner guilty of conspiracy to commit a drug offense, and that

there was sufficient evidence from which a jury could conclude that venue was proper on the

conspiracy count. *See id.* at 365-66, 367-68, 369. The Fifth Circuit also ruled that the Court

properly admitted the testimony of Homer Markhart ("Markhart"), a DEA special agent,

regarding an incriminating nonverbal gesture made by Petitioner during an interview conducted

while Petitioner was under arrest several months after the drug deal at the Cheers Travel Center.

*See id.* at 373-74. However, the Fifth Circuit reversed Petitioner's conviction and sentence on the

4

attempt count for lack of venue. *See id*. at 369-72. However, because this Court sentenced

Petitioner to identical and concurrent prison sentences on the two counts, the Fifth Circuit did not

remand for resentencing in light of its reversal of the attempt count. *See id*. at 372. Instead, the

Fifth Circuit reversed the $100.00 special assessment on the attempt count. *See id*.

This Court then entered an amended judgment (the "Amended Judgment"), ECF No. 330,

on October 23, 2012, which modified Petitioner's sentence to conform with the Fifth Circuit's

ruling.

The Supreme Court of the United States denied Petitioner's petition for a writ of

certiorari on February 19, 2013. *See Thomas v. United States*, --- U.S. ----, 133 S.Ct. 1281

(2013).

Petitioner filed the Motion on September 16, 2013. *See* Mot. The Government then filed

a response (the "Response"), ECF No. 344, on November 14, 2013. Petitioner filed a reply (the

"Reply"), ECF No. 355, on December 27, 2013. Petitioner filed the Motion to Amend on May

22, 2014.

## II.   DISCUSSION

### A.   Standard

28 U.S.C. § 2255 provides that

> [a] prisoner in custody under sentence of a court established by Act of Congress
> claiming the right to be released upon the ground that the sentence was imposed
> in violation of the Constitution or laws of the United States, or that the court was
> without jurisdiction to impose such sentence, or that the sentence was in excess of
> the maximum authorized by law, or is otherwise subject to collateral attack, may
> move the court which imposed the sentence to vacate, set aside or correct the
> sentence.

28 U.S.C. § 2255(a).

After a petitioner has been convicted and has exhausted or waived any right to appeal, a court is normally "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Frady*, 456 U.S. 152, 164 (1982)). Accordingly, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (quoting *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994)). Typically, before a court will grant relief pursuant to § 2255, the petitioner must establish that "(1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).

Moreover, a collateral challenge to a conviction or sentence should not serve as a substitute for a direct appeal. *Frady*, 456 U.S. at 165; *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991). When raising issues of jurisdictional or constitutional magnitude for the first time in a motion seeking collateral relief, a petitioner must either: (1) demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error, or (2) show that he is "actually innocent" of the crime for which he was convicted. *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999). The cause and actual prejudice standard is "significantly more rigorous than even the plain error standard . . . applied on direct appeal." *Gaudet*, 81 F.3d at 589. If the petitioner does not meet either burden, then he is procedurally barred from attacking his conviction or sentence. *United States v. Drobny*, 955 F.2d 990, 994-95 (5th Cir. 1992).  This

6

procedural bar does not apply, however, to claims alleging ineffective assistance of counsel. *See Massaro v. United States*, 538 U.S. 500, 508 (2003).

The United States Constitution's Sixth Amendment guarantees an accused the right to the assistance of counsel for his defense in all criminal prosecutions. U.S. Const. amend. VI. Moreover, "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). "[I]neffective assistance claims are ordinarily brought for the first time on collateral review because of the difficulty of compiling an adequate record by the time of direct appeal." *Gaudet*, 81 F.3d at 589 n.5. To obtain relief on an ineffective assistance of counsel claim, a petitioner must demonstrate both (1) that his "counsel's performance was deficient[,]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review). A failure to establish either prong of this test requires a court to find that counsel's performance was constitutionally effective. *See Strickland*, 466 U.S. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").

The test's performance prong centers on whether counsel's assistance was reasonable in light of all the circumstances at the time of counsel's conduct. *See Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). In order to obtain relief, a petitioner must establish "that counsel made

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In assessing whether a particular counsel's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

A deficiency in counsel's performance, even if professionally unreasonable, does not necessarily equal ineffective assistance of counsel; the petitioner must also demonstrate actual prejudice. *See id.* at 691-92 ("The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."). The test's prejudice prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Because Petitioner appears pro se, the Motion is "entitled to a liberal construction that includes all reasonable inferences which can be drawn from" it. *United States v. Peralta-Ramirez*, Criminal No. H-04-0150-06, Civil Action No. H-07-4582, 2008 WL 4630369, at *2 (S.D. Tex. Oct. 16, 2008) (citing *Haines v. Kerner*, 404 U.S. 519, 521 (1972); *United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997)). However, even a pro se litigant must provide sufficient facts in support of his or her claims; "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *accord Ross v.*

8

*Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

### B.    Analysis

Petitioner alleges that Trial Counsel rendered ineffective assistance in several respects.[4]

Petitioner also requests an evidentiary hearing on the issues posed by the Motion. *See* Mot. 15,

36; Reply 1-2, 6. The Court considers each of Petitioner's challenges in turn.

### 1.    Trial Counsel's alleged failure to interview and subpoena witnesses to testify at trial as to the reason for Petitioner's presence at the scene of the drug deal

Petitioner first argues that Trial Counsel should have presented evidence that Petitioner

was present at Cheers Travel Center, the scene of the drug deal, for a benign and lawful purpose

on November 25, 2008. *See* Mot. 18-20, 38-40. Petitioner claims that, on that date, he "had a

doctor[']s appointment regarding a[n] injury [he] had suffered while at work. As a result of the

injury [his] superiors at his employment arranged a doctor[']s visit for [P]etitioner, as well as a

consult[ation] with a law firm to address workmen[']s compensation issues." *Id*. at 19.

According to Petitioner, he was present at Cheers Travel Center on the date in question only

because Davis "request[ed] that [P]etitioner accompany him to meet a female friend at Cheers

[and] have some breakfast, while exhausting some time prior to making [P]etitioner[']s

appointments with doctors and lawyers." *Id*. at 20. Petitioner argues that Trial Counsel

unreasonably failed to interview and subpoena various witnesses to testify at trial as to

Petitioner's version of events. *See id*. at 16-21. Petitioner claims that if Trial Counsel presented

---

[4] In addition to the challenges discussed below, Petitioner repeatedly claims throughout the Motion that the Court should vacate his sentence because he is "actually innocent" of the conspiracy offense. *See* Mot. 7, 18, 20, 30-32; Reply 6. However, "'[a]ctual innocence' is not a free-standing ground for relief on a motion to vacate" pursuant to 28 U.S.C. § 2255; "rather, it is a gateway to consideration of claims of constitutional error that otherwise would be barred from review" by the procedural bar doctrine. *See* 24 C.J.S. Criminal Law § 2278 (2014) (citing 28 U.S.C. § 2255; *United States v. Scruggs*, 691 F.3d 660 (5th Cir. 2012)). Petitioner's arguments are not procedurally barred because he raises solely ineffective assistance claims, rather than direct challenges to his conviction, in the Motion. *See Massaro*, 538 U.S. at 508. Thus, the Court need not address Petitioner's allegations of actual innocence.

this evidence at trial, the jury would have concluded that Petitioner had no knowledge of the conspiracy and would therefore have acquitted him. *See id.* at 18-20. Petitioner contends that he asked Trial Counsel to present this theory of the case at trial, but that Trial Counsel refused, to Petitioner's detriment. *See id.* at 19-21.

A petitioner who challenges his or her counsel's failure to procure a witness's testimony at trial faces a formidable burden:

> "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Where the only evidence of an uncalled witness's testimony is from a § 2255 movant, the court views claims of ineffective assistance of counsel with "great caution."

*United States v. Jackson*, Nos. 4:12-CV-715-A, 4:07-CR-03-A, 2013 WL 1363905, at *2 (N.D. Tex. Apr. 4, 2013) (internal citations omitted) (quoting *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985)).

To succeed on such a claim, the petitioner must (1) "name the witness;" (2) "demonstrate that the witness was able to testify and would have done so;" (3) "set out the content of the witness's proposed testimony;" and (4) "show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). The petitioner must also satisfy the traditional *Strickland* elements of deficiency and prejudice. *See United States v. Osamor*, Cr. No. H–01–764, C.A. No. H–09–741, 2014 WL 1028395, at *10 (S.D. Tex. Mar. 16, 2014).

Petitioner claims that Trial Counsel should have called the following witnesses to testify at trial as to Petitioner's reasons for being at Cheers Travel Center at the time of the drug deal: (1) patrons and employees present at Cheers Travel Center on November 25, 2008; (2) Petitioner's immediate workplace supervisor Dale Shumaker ("Shumaker"); and (3) the worker's compensation attorneys with whom Petitioner planned to meet on November 25, 2008 ("Lawler & Lawler"). *See* Mot. 19-20, 38-40, 42.

10

### a.     Patrons and employees of Cheers Travel Center

Petitioner contends that Trial Counsel should have subpoenaed employees and/or patrons who were present at Cheers Travel Center on November 25, 2008. *See id*. at 19-20. Petitioner argues that their testimony "would have clearly supported [P]etitioner[']s defense that his presence" at Cheers Travel Center "was due to [Davis] requesting that [P]etitioner accompany him to meet a female friend at Cheers, have some breakfast, while exhausting some time prior to making [P]etitioner's appointments with doctors and lawyers," and that Petitioner was merely an innocent bystander to the drug deal. *Id*. at 20.

Petitioner does not identify the employees or patrons by name or demonstrate that they could have and would have testified at trial. *See id*. at 19-20. Nor does Petitioner provide any indication that any of the patrons or employees would know or recall Petitioner's purported lawful purpose for being at Cheers on that date, so Petitioner cannot show that their testimony would have been favorable. *See id*. Petitioner therefore cannot demonstrate that Trial Counsel rendered ineffective assistance by failing to interview or subpoena these witnesses. *See Day*, 566 F.3d at 538.

### b.     Shumaker and Lawler & Lawler

Petitioner also contends that Trial Counsel should have called Shumaker to testify at trial:

[O]n the morning of November 25, 200[8], after reporting back to work on November 24, 2008, after an extended absence from work, due to a work related injury, and medical conditions, [Shumaker] informed [Petitioner] that the company wanted [Petitioner] to take a "fitness for duty exam" before reporting back to work. [Petitioner] was instructed to go home, and to call [Shumaker] the following day, to get appointment information.

[Petitioner] had a "workman's comp." claim, and believed that his supervisor may have been retaliating against him, thus [he] contacted his workman[']s [compensation] lawyer to make an appointment, whereas a[n] appointment was made for [Petitioner] to come to her office the following day. . .

11

[O]n the 25th of November 2008 [Petitioner called Shumaker] about what doctor [he] would be seeing. [Shumaker] informed [Petitioner] that he would personally call [Petitioner] with the information as to what doctor [Petitioner] would be seeing. [Shumaker] indicated that his office would be making the appointment and would notify [Petitioner] as to the time and date of the appointment. Shortly after this conversation with [Shumaker, Petitioner] received a phone call from [Davis inviting Petitioner to join him at Cheers Travel Center].

[Petitioner asserts] that this information was relevant to his defense, as it would have supported the testimony provided by [Davis] that [Petitioner] had [] pre-arranged appointment[]s for the 25th of November 2008, and that said testimony would have supported the fact that [Davis] had invited [Petitioner] to accompany him to the Cheers Travel Center on the 25th to eat breakfast, while [Davis] waited to meet a female acquaintance. [Petitioner] believes that the information and potential subsequent testimony was essential to his lack of knowledge that a conspiracy in which [Petitioner] had no knowledge was taking place, and that [Petitioner]'s presence in the Cheers Travel Center was due to two factors previously described, the invitation, and the appointment. [Petitioner] further submits[] that during this call to [Trial Counsel] to interview potential witnesses for his defense that [Trial C]ounsel was asked to call [Shumaker].

Mot. 38-39.

Relatedly, Petitioner also claims that Trial Counsel should have subpoenaed and interviewed members of Lawler & Lawler, the worker's compensation firm with which Petitioner had an appointment on November 25, 2008. *See id*. at 39, 42. Petitioner asserts that the attorneys' testimony would further demonstrate that he was present at Cheers only to pass time while waiting for his appointment to discuss worker's compensation issues, and that he had no knowledge of the conspiracy. *See id*. at 39.

Neither Shumaker's testimony nor the testimony of members of Lawler & Lawler would have changed the outcome of the trial because it would not have rebutted the most damning evidence against Petitioner. Even if these witnesses testified as to Petitioner's reason for not being at work on the date of the drug deal, it would not explain why Petitioner "was parked next to [Davis's] van for at least half an hour" in his Cadillac "as the parties waited for the drugs to be

placed in the van, followed the van with the sham cocaine out of the truck stop parking lot, and then traveled with the van." *See Thomas*, 690 F.3d at 367. Nor would the testimony rebut the Government's evidence that Petitioner "directed [the confidential source] to retrieve the money" in exchange for the cocaine. *See id*. The proposed testimony also would not explain why, after Davis's van "flipped off the road" during a high-speed chase with the police, Petitioner stopped his own vehicle "only long enough for Davis to get into the Cadillac" and "then continued driving" after "abandon[ing] the van on the side of the road." *See id*. at 368; *accord* Trial Tr. 187-88, June 7, 2010. Because neither Shumaker's testimony nor the testimony of members of Lawler & Lawler would have rebutted the Government's evidence of Petitioner's knowledge of the conspiracy, Trial Counsel did not render ineffective assistance by failing to interview and subpoena Shumaker to testify at trial. *See Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."); *Day*, 566 F.3d at 538.

### 2.   Trial Counsel's alleged failure to subpoena a chemist previously involved in the Case to testify at trial

In addition to the witnesses who purportedly would have testified as to Petitioner's innocuous justification for being at Cheers with Davis on November 25, 2008, Petitioner also argues that Trial Counsel should have subpoenaed an unidentified "chemist who was removed from the [C]ase." *See* Mot. 31. According to Petitioner, "the chemist had been removed under suspicious circumstances which may have been directly linked to evidence tampering and falsifying documents[] in previous drug related investigations, thus directly impacting the integrity of the prosecution against [Petitioner]." *Id*. at 40. Petitioner contends that if Trial

Counsel had subpoenaed this chemist and called him or her to testify at trial, "the facts would have established the unreliability of the evidence," and the result of the trial would have been different. *See id.* at 31.

Petitioner does not identify the chemist by name, demonstrate that the chemist could have and would have testified at trial, set out the chemist's proposed testimony, or identify what evidence the chemist's testimony would have rebutted. *See id.* at 31, 40. Petitioner's claim therefore fails. *See Day*, 566 F.3d at 538.

### 3. Trial Counsel's alleged failure to introduce testimony regarding post-arrest exculpatory statements made by Petitioner

Petitioner claims that Trial Counsel rendered ineffective assistance by failing to introduce testimony of Jay Holcomb ("Holcomb"), a corporal of the Narcotics/Vice Unit of the Missouri State Highway Patrol who interviewed Petitioner after his arrest on November 25, 2008.[5] *See* Reply 5; Mot. 53-55. Petitioner asserts that "Holcomb[] took the initial report and statement from [Petitioner], and [Petitioner] stated that he had no knowledge of a conspiracy, or of the delivery of any drugs to the [Cheers] Travel Center that day, or any knowledge of who the drugs belong[ed] to. That was evidence that needed to be put before the jury." Reply 5. Petitioner further claims that Holcomb video-recorded his interview of Petitioner, including Petitioner's statement that he had no involvement with the conspiracy, and that Trial Counsel should have played this video tape to the jury. *See id.*

Petitioner's claim fails for several reasons. First, testimony or video evidence of Petitioner's post-arrest exculpatory statements would in all likelihood be inadmissible at trial.

---

[5] Petitioner raises this argument for the first time in the Reply. *See* Reply 5. The Court assumes without deciding that a court may consider issues raised by a § 2255 petitioner for the first time in a reply brief. *See United States v. Valles*, Criminal Action No. 11–090, 2014 WL 2560312, at *4 (E.D. La. June 6, 2014).

14

The Federal Rules of Evidence generally forbid the introduction of hearsay evidence – that is, an out-of-court statement offered for the truth of the matter asserted. *See* Fed. R. Ev. 801(c). Although exceptions to the rule against hearsay exist, *see* Fed. R. Ev. 801(d); 803-804; 806-07, a criminal defendant's exculpatory out-of-court statements may generally not be introduced for the truth of the matter asserted. *See United States v. Doxy*, 225 F. App'x 400, 402 (7th Cir. 2007) ("Typically, a party's self-serving, exculpatory, out-of-court statement is inadmissible hearsay."); *United States v. Ortega*, 03 F.3d 675, 682 (9th Cir. 2000) (quoting *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988)) ("If the district court were to have [allowed the defendant to introduce his self-serving statements, the defendant] would have been able to place his exculpatory statements 'before the jury without subjecting [himself] to cross-examination, precisely what the hearsay rule forbids.'").

To that end, courts often exclude "videotaped, post-arrest, purportedly exculpatory statement[s]" given by criminal defendants. *See United States v. Villalovos*, No. 06-30008-01, 2009 WL 2767661, at *5 (W.D. La. Aug. 26, 2009). *Accord United States v. Vargas*, 689 F.3d 867, 870 (7th Cir. 2012) (affirming exclusion of a defendant's exculpatory statement made on a video of defendant's arrest); *United States v. Feliciano*, No. CR–08–0932–01 PHX–DGC, 2009 WL 3353030, at *1 (D. Ariz. Oct. 19, 2009) (granting government's motion in limine requesting redaction of defendant's self-serving statements from videotaped interview with law enforcement). Courts also regularly exclude self-serving statements made by a criminal defendant to law enforcement officers regarding the defendant's lack of involvement in, knowledge of, or culpability for the charged offense. *See United States v. Mitchell*, 502 F.3d 951, 964-65 (9th Cir. 2007); *Doxy*, 225 F. App'x at 402-03; *United States v. Larsen*, 175 F. App'x 236, 241-42 (10th Cir. 2006); *United States v. Gallagher*, 57 F. App'x 622, 627-29 (6th Cir.

15

2003); *Fernandez*, 839 F.2d at 640; *Feliciano*, 2009 WL 3353030, at *1 ("A defendant's self-serving statements to law enforcement are inadmissible hearsay.").

Petitioner's statements to Holcomb that he "had no knowledge of a conspiracy, or of the delivery of any drugs to the [Cheers] Travel Center that day, or any knowledge of who the drugs belong to" are self-serving out-of-court statements made by a criminal defendant in his own favor. *See* Reply 5. If Trial Counsel had sought to introduce these statements as evidence that Petitioner was not involved in the conspiracy, the statements would be inadmissible hearsay. *See Mitchell*, 502 F.3d at 964-65; *Doxy*, 225 F. App'x at 402-03; *Larsen*, 175 F. App'x at 241-42; *Gallagher*, 57 F. App'x at 627-29; *Fernandez*, 839 F.2d at 640; *Feliciano*, 2009 WL 3353030, at *1; *Villalovos*, 2009 WL 2767661, at *5. Thus, Trial Counsel's decision not to introduce testimony from Holcomb and the video of Petitioner's interview with Holcomb was wholly reasonable. *See Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.").

Secondly, even assuming that Petitioner's exculpatory post-arrest statements would be admissible or that the Government would not object to their introduction, the Court "must indulge a strong presumption" that Trial Counsel's decision not to call Holcomb to testify or play the video of Petitioner's post-arrest interview "might be considered sound trial strategy." *See Strickland*, 466 U.S. at 689 (quoting *Michel*, 350 U.S. at 101) (internal quotation marks omitted). In particular, "[c]omplaints of uncalled witnesses are not favored[] because the presentation of testimonial evidence is a matter of trial strategy." *Schwander*, 750 F.2d at 500 (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *United States*

16

*v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)).

Trial Counsel could readily have concluded that introducing testimony and evidence from a law enforcement officer – whose testimony would in all likelihood be more favorable to the Government than to Petitioner – would harm Petitioner's case more than help it. Indeed, Holcomb's police report, which Petitioner attaches to the Motion, states that Petitioner admitted to Holcomb during the interview that "he ha[d] picked up cocaine in the past from Davis," that he "did not have to pay Davis for the cocaine," that "the cocaine was sometimes powder and sometimes crack cocaine," and that "Davis would always meet him somewhere to give him the cocaine." Mot. 54. Thus, Trial Counsel could reasonably have concluded that introducing testimony from Holcomb and the video footage of the interview would have risked portraying Petitioner as a regular cocaine dealer, especially if the Government cross-examined Holcomb or requested that the Court play the entire video, including the inculpatory statements, pursuant to the rule of completeness. *See* Fed. R. Ev. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time."); Fed. R. Ev. 404(b)(2) (permitting the introduction of the defendant's past crimes to prove modus operandi, knowledge, or lack of accident, inter alia). The Court therefore cannot conclude that Trial Counsel's decision not to introduce this evidence was "so ill chosen that it permeate[d] the entire trial with obvious unfairness." *See Jones*, 287 F.3d at 331 (quoting *Garland*, 717 F.2d at 206).

For these reasons, the Court rejects Petitioner's claim that Trial Counsel rendered ineffective assistance by failing to introduce Holcomb's testimony or the videotaped interview.

### 4.    Trial Counsel's alleged failure to suppress Markhart's testimony

Petitioner claims that Trial Counsel rendered ineffective assistance by failing to move to suppress Markhart's testimony on the grounds that it was (1) irrelevant and (2) procured in violation of Petitioner's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). *See* Mot. 21-25. Markhart testified at trial that he arrested and interviewed Petitioner for a second time in September 2009. *See* Trial Tr. 251-56, June 7, 2010. Markhart testified that he asked Petitioner if he knew who owned the cocaine involved in the conspiracy offense, and that Petitioner responded by nodding affirmatively. *See id*. at 255. Markhart also testified that he asked Petitioner if he knew where the owner was, and that Petitioner answered that he did. *See id*. Markhart's testimony therefore bolstered the Government's evidence of Petitioner's involvement in the conspiracy. According to Petitioner, if Trial Counsel had successfully moved to suppress Markhart's testimony, the jury would not have convicted Petitioner on the conspiracy count. *See* Mot. 25.

To demonstrate that counsel's failure to file a motion to suppress amounted to ineffective assistance, the petitioner must show that (1) a suppression motion would have been meritorious, (2) counsel's failure to file such a motion was objectively unreasonable, and (3) there is a reasonable probability the verdict would have been different absent the excludable evidence. *See United States v. Ratliff*, 719 F.3d 422, 423 (5th Cir. 2013) (citing *Ward v. Dretke*, 420 F.3d 479, 487-88 & n.19 (5th Cir. 2005)); *United States v. Alanis*, 88 F. App'x 15, 17 (5th Cir. 2004) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

Although Trial Counsel did not file a pre-trial motion to suppress Markhart's testimony in its entirety, Trial Counsel objected at trial to Markhart's testimony insofar as it related to Petitioner's inculpatory statements during the interview. *See* Trial Tr. 217-18, June 7, 2010.

18

Before the Court ruled on Trial Counsel's objection, the Government and Trial Counsel conducted a voir dire examination of Markhart, Petitioner, and another federal agent present during Markhart's interview of Petitioner to determine whether Petitioner knowingly waived his *Miranda* rights before making inculpatory post-arrest statements to Markhart. *See id*. at 218-49. The voir dire examination of these witnesses revealed that (1) Markhart orally advised Petitioner of his *Miranda* rights; (2) Petitioner initialed the *Miranda* rights form to affirm that he understood his *Miranda* rights; and (3) Petitioner refused to sign the bottom of the *Miranda* waiver form; but (4) Petitioner nevertheless agreed to answer Markhart's questions. *See id*. Trial Counsel objected that Markhart should not be allowed to testify regarding the interview in front of the jury because the testimony would amount to mere bolstering, and because Petitioner did not subject himself to custodial interrogation. *See id*. at 230-31. The Court overruled Trial Counsel's objection at the conclusion of the voir dire examination. *See id*. at 249.

The Court first rejects Petitioner's claim that Trial Counsel should have moved to suppress Markhart's testimony pursuant to *Miranda*, 384 U.S. 436. Even though Trial Counsel did not file a pre-trial motion to suppress, Trial Counsel objected to Markhart's testimony on *Miranda* grounds at trial, as noted above. *See* Trial Tr. 230-31, June 7, 2010. The Court considered and overruled Trial Counsel's objection. *See id*. at 249. Because Trial Counsel did indeed raise Petitioner's proposed objection, and because the Court overruled that objection, Trial Counsel's performance was neither deficient nor prejudicial to Petitioner's defense. *See Ratliff*, 719 F.3d at 423 (citing *Ward*, 420 F.3d at 487-88 & n.19); *Alanis*, 88 F. App'x at 17 (quoting *Kimmelman*, 477 U.S. at 375).

The Court also rejects Petitioner's claim that Trial Counsel should have moved to suppress Markhart's testimony on relevance grounds. "Evidence is relevant if . . . it has any

tendency to make a fact more or less probable than it would be without the evidence; and . . . the

fact is of consequence in determining the action." Fed. R. Ev. 401. As the Fifth Circuit held

when ruling on Petitioner's appeal, Markhart's testimony was clearly relevant because "it made

it more likely that [Petitioner] associated with the individual who owned the cocaine, knew the

person to which Markhart was referring, and was involved in a transaction that involved the

cocaine." *Thomas*, 690 F.3d at 374. This Court has no power to reconsider the Fifth Circuit's

ruling on this issue. *See United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) ("It is settled

in this Circuit that issues raised and disposed of in a previous appeal from an original judgment

of conviction are not considered in § 2255 Motions.") (citing *United States v. Jones*, 614 F.2d

80, 82 (5th Cir. 1980)). Because a motion to suppress Markhart's testimony on relevance

grounds would not have been meritorious, Trial Counsel did not render ineffective assistance by

failing to file one. *See Ratliff*, 719 F.3d at 423 (citing *Ward*, 420 F.3d at 487-88 & n.19); *Alanis*,

88 F. App'x at 17 (quoting *Kimmelman*, 477 U.S. at 375). *See also Clark v. Collins*, 19 F.3d 959,

966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the

very opposite.").

### 5.      Trial Counsel's alleged failure to investigate

Petitioner claims that Trial Counsel rendered ineffective assistance by failing to

adequately investigate the facts of the case prior to trial. *See* Mot. 19-21, 39-40.

"Adequate investigation is a requisite of effective assistance." *Gray v. Lucas*, 677 F.2d

1086, 1093 (5th Cir. 1982) (citing *Rummel v. Estelle*, 590 F.2d 103, 104 (5th Cir. 1979); *Gaines

v. Hopper*, 575 F.2d 1147 (5th Cir. 1978)). To establish an ineffective assistance claim

predicated on counsel's failure to investigate, the petitioner "must show both a failure to

investigate adequately and prejudice arising from that failure." *Id*. (citing *Washington v. Watkins*,

20

655 F.2d 1346, 1362 & n.32 (5th Cir. 1981)). "A defendant who alleges a failure to investigate

on the part of his [or her] counsel must allege with specificity what the investigation would have

revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882

F.2d 999, 1003 (5th Cir. 1989) (citations omitted).

Most of Petitioner's "failure to investigate" claims mirror the challenges that the Court

rejected in the previous sections of this Order. *See* Mot. 19, 39-40 (challenging Trial Counsel's

alleged failure to investigate information regarding Petitioner's appointments with doctors and

lawyers on November 25, 2008). The Court rejects those claims for the reasons given above.

Petitioner raises only three "failure to investigate" claims that are distinct from the

challenges the Court has already rejected. Petitioner claims that Trial Counsel should have (1)

investigated the backgrounds of the various government witnesses and agents who testified at

trial; (2) "consulted with a[n] expert chemist;" and (3) "pursued independent test[ing] of the

audio recording." *See id*. at 20. However, Petitioner does not allege with specificity what these

investigations would have revealed or how they would have altered the outcome of the trial. *See

id*. The Court therefore concludes that Trial Counsel did not render ineffective assistance in this

regard. *See Green*, 882 F.2d at 1003 (citations omitted).

### 6.    Trial Counsel's alleged failure to effectively consult with Petitioner

Petitioner claims that Trial Counsel rendered ineffective assistance because he "only

visited with [Trial C]ounsel one time, which was one day before the trial was to begin." Mot. 17.

According to Petitioner,

> [t]he inadequacy of visits[ and] communication[] eliminated any opportunity to
> discuss the case, file pre-trial motions, perform any investigations, interview any
> of [P]etitioner's witnesses, seek to suppress any statements or evidence which was
> available to the prosecution which may have been adversely used to establish
> [P]etitioner['s] involvement in the prosecution of this case . . . Petitioner submits

21

that there exists no conceivable way that he could have had a[n] effective
defense[] if [Trial C]ounsel only visited him one day before the trial.
*Id*. at 17-18.

"[B]revity of consultation time between a defendant and his counsel, alone, cannot
support a claim of ineffective assistance of counsel." *Murray v. Maggio*, 736 F.2d 279, 282 (5th
Cir. 1984) (citing *Jones v. Wainwright*, 604 F.2d 414, 416 (5th Cir. 1979)). *Accord United States
v. Effron*, Criminal Action No. 08–71, 2013 WL 56135, at *4 (E.D. La. Jan. 3, 2013) (applying
*Murray* in context of § 2255 case); *Malone v. United States*, Civil Action No. 5:08–CV–80, 2010
WL 56000, at *4 (E.D. Tex. Jan 5, 2010) (same); *Roman-Salgado v. United States*, Civil Action
No. L–09–56, Criminal No. L–06–CR–1222–1, 2009 WL 5195957, at *3 (S.D. Tex. Dec. 21,
2009) (same); *Perez-Herrera v. United States*, Nos. EP–06–CA–0357–DB, EP–05–CR–1539–
DB, 2009 WL 510957, at *4 (W.D. Tex. Jan. 16, 2009) (same); *United States v. Harris*, Criminal
No. 04–30025–01, 2008 WL 5157923, at *8 (W.D. La. Oct. 28, 2008) (same). "While counsel
must devote sufficient time to ensure an adequate defense in order to render effective assistance .
. . time spent in preparation is only one of the elements to be considered and the totality of facts
may not be over-ridden by a judicial stop watch." *Perez-Herrera*, Nos. 2009 WL 510957, at *4
(quoting *Herring v. Estelle*, 491 F.2d 125, 128 (5th Cir. 1974)) (internal quotation marks
omitted). For a petitioner to prevail on a claim that his or her counsel rendered ineffective
assistance by failing to adequately consult with him or her, the petitioner must show "how more
frequent meetings, or meetings longer in duration, with his [or her] attorney would have changed
the nature of the proceedings in his [or her] case." *Delgado v. United States*, Nos. EP–10–CV–
355–PRM, EP–08–CR–460–PRM–7, 2011 WL 11741276, at *3 (W.D. Tex. Sept. 30, 2011).
*Accord Perez-Herrera*, 2009 WL 510957, at *4; *Harris*, 2008 WL 5157923, at *8.

Petitioner has failed to do so. Petitioner merely argues that, if Trial Counsel met with him

earlier, more frequently, and for longer, he would have had more time to raise the challenges that the Court has already deemed nonmeritorious in the previous sections of this Order. *See* Mot. 17-21. Because Petitioner has failed to demonstrate how a greater degree of consultation with Trial Counsel would have affected the outcome of the trial, the Court rejects his ineffective assistance claim. *See Delgado*, 2011 WL 11741276, at *3; *Perez-Herrera*, 2009 WL 510957, at *4; *Harris*, 2008 WL 5157923, at *8.

### 7. Trial Counsel's alleged failure to object to jury instructions

Petitioner argues that Trial Counsel rendered ineffective assistance by failing to raise various objections to the jury instructions tendered at trial. *See* Mot. 26-30.

To prevail on an ineffective assistance claim predicated on counsel's failure to object to jury instructions, the petitioner must satisfy the usual deficiency and prejudice elements set forth in *Strickland*. *See United States v. Edwards*, 280 F. App'x 409, 421 (5th Cir. 2008). A defense attorney's failure to object to a jury instruction does not amount to deficient performance if the instruction in question is not improper or erroneous. *See id.*

### a. Conspiracy instructions

First, Petitioner argues that Trial Counsel should have objected to the jury instructions regarding the elements of a conspiracy offense. *See* Mot. 26. "Petitioner contends that the [C]ourt in instructing the jury gave the false impression that [an] alleged drug dealer[']s participation in a conspiracy could be inferred from circumstantial evidence." *Id.* According to Petitioner, the tendered instruction lacked the necessary element of "the nexus of a criminal objective." *See id.* at 27-28. Petitioner argues that Trial Counsel should have requested an instruction informing the jury that merely "being present at a scene of a[n] alleged crime" and "driving a[n] automobile in which money was found[] does not support that [P]etitioner actually

was aware of a conspiracy to possess or distribute drugs, nor should the jury infer such." *Id.* at 26. By failing to object, Petitioner argues, Trial Counsel "in effect abandoned the issue for appellate review." *Id.* at 30.

To establish a conspiracy to commit a drug offense under 21 U.S.C. § 846, "the government must prove that: (1) an agreement existed between two or more persons to violate federal narcotics law, (2) the defendant knew of the existence of the agreement, and (3) the defendant voluntarily participated in the conspiracy." *United States v. Ochoa*, 667 F.3d 643, 648 (5th Cir. 2012) (citing *United States v. Cardenas*, 9 F.3d 1139, 1157 (5th Cir. 1993)). "The jury can 'infer the existence of a conspiracy from the presence, association, and concerted action of the defendant with others.'" *Thomas*, 690 F.3d at 366 (quoting *United States v. Curtis*, 635 F.3d 704, 719 (5th Cir. 2011)). Although "mere presence at the scene or association with co-conspirators," standing alone, is insufficient to establish a conspiracy, "they are factors that may be considered 'in finding conspiratorial activity.'" *Id.* (quoting *United States v. Gonzales*, 79 F.3d 413, 423 (5th Cir. 1996)).

The instructions tendered to the jury at trial accurately stated the elements of a conspiracy offense under 21 U.S.C. § 846.[6] *Compare* ECF No. 207, at 25-26, *with Thomas*, 690 F.3d at 366

---

[6] The Court's instructions on conspiracy are set forth in their entirety as follows:

> Title 21, United States Code, Section 846, makes it a crime for anyone to conspire with someone else to commit a violation of certain controlled substances laws of the United States. In this case, the defendants are charged with conspiring to possess with intent to distribute a controlled substance.

> A "conspiracy" is an agreement between two or more persons to join together to accomplish some unlawful purpose. It is a kind of "partnership in crime" in which each member becomes the agent of every other member.

> For you to find any of the defendants guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt for that particular defendant:

> *First:*     That two or more persons, directly or indirectly, reached an agreement to possess with

(setting forth the elements of a conspiracy to commit a drug offense). Notably, the instructions correctly stated that a jury cannot infer a conspiracy through mere presence at the scene of the crime, just as Petitioner requests in the Motion. *See Thomas*, 690 F.3d at 366. Moreover, the conspiracy instructions exactly match the Fifth Circuit's Pattern Jury Instructions for alleged violations of 21 U.S.C. § 846. *See* Pattern Jury Instructions (Criminal Cases) § 2.89 (2012). "It is well-settled that a district court does not err by giving a charge that tracks this Circuit's pattern jury instructions and that is a correct statement of the law." *United States v. Whitfield*, 590 F.3d 325, 354 (5th Cir. 2009) (citing *United States v. Turner*, 960 F.2d 461, 464 (5th Cir. 1992)). Because the jury instructions were not erroneous in any respect, Trial Counsel did not render

---

intent to distribute a controlled substance;

*Second:*  That the defendant knew of the unlawful purpose of the agreement;

*Third:*  That the defendant joined in the agreement willfully, that is, with the intent to further its unlawful purpose; and

*Fourth:*  That the overall scope of the conspiracy involved at least five kilograms of a mixture or substance containing a detectable amount of cocaine.

One may become a member of a conspiracy without knowing all of the details of the unlawful scheme or the identities of all the other alleged conspirators. If a defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict him for conspiracy, even though that defendant had not participated before and even though that defendant played only a minor part.

The government need not prove that the alleged conspirators entered into any formal agreement, nor that they directly stated between themselves all the details of the scheme. Similarly, the government need not prove that all of the details of the scheme alleged in the superseding indictment were actually agreed upon or carried out. Nor must it prove that all of the persons alleged to have been members of the conspiracy were such, or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.

Mere presence at the scene of an event, even with knowledge that a crime is being committed, or the mere fact that certain persons may have associated with each other and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of a conspiracy, does not thereby become a conspirator.

ECF No. 207, at 25-26.

ineffective assistance by failing to object to them. *See Ramos v. United States*, Nos. EP–10–CV–108–KC, EP–05–CR–856–KC–1, 2012 WL 10921, at *28-29 (W.D. Tex. Jan. 3, 2012) (rejecting ineffective assistance claim predicated on counsel's alleged failure to object to jury instruction that mirrored Fifth Circuit's Pattern Jury Instruction); *United States v. Johnson*, Criminal No. 1:02cr9WJG–JMR–1, Civil Action No. 1:11cv118WJG, 2011 WL 3208029, at *8 (S.D. Miss. July 28, 2011) (same); *United States v. Rubio*, Cr. No. C-02-351, C.A. No. C-06-454, 2007 WL 1231678, at *5 (S.D. Tex. Apr. 24, 2007) (same).

The Court likewise rejects Petitioner's contention that the jury instructions "gave the false impression that [an] alleged drug dealer[']s participation in a conspiracy could be inferred from circumstantial evidence." Mot. 26. It is in fact perfectly permissible for the government to use only "[c]ircumstantial evidence [to] establish the existence of a conspiracy, as well as an individual's voluntary participation in it." *Thomas*, 690 F.3d at 366 (quoting *Curtis*, 635 F.3d at 719). Trial Counsel therefore did not render ineffective assistance by failing to propose an instruction stating that circumstantial evidence is insufficient to prove a conspiracy. *See Clark*, 19 F.3d at 966 ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

Thus, the Court denies the Motion insofar as Petitioner alleges that Trial Counsel rendered ineffective assistance by failing to object to the conspiracy charge.

**b.      Instructions regarding Jimenez's testimony**

Petitioner also argues that Trial Counsel should have proposed a jury instruction specifying that, as a confidential source, Jimenez's testimony "should not be accorded greater weight than any other witness who testified in light of the windfall he stood to gain from the conviction of [P]etitioner." Mot. 27.

The jury charge contained just such an instruction. Specifically, the Court admonished the jury that

> the testimony of one who provides evidence against a defendant as an informer for pay or for immunity from punishment or for personal advantage or vindication, must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses. You, the jury, must decide whether the witness's testimony has been affected by any of those circumstances, or by the witness's interest in the outcome of the case, or by prejudice against a defendant, or by the benefits that the witness has received either financially or as a result of being immunized from prosecution. You should keep in mind that such testimony is always to be received with caution and weighed with great care.

> You should never convict any defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt.

ECF No. 207, at 13.

Because the jury instructions did indeed include Petitioner's desired instruction, Trial Counsel did not render ineffective assistance by failing to propose it. *See Ramos*, 2012 WL 10921, at *27.

### c.        Instructions regarding the insufficiency of evidence

Petitioner also argues, somewhat confusingly, that Trial Counsel rendered ineffective assistance by failing to object to the jury instructions on the ground that the evidence presented at trial was insufficient to support the conspiracy charge. *See* Mot. 26-31. Petitioner's argument fails because the Fifth Circuit previously ruled on appeal that "[t]here was sufficient evidence to support [Petitioner]'s conviction[] for conspiracy to possess with the intent to distribute cocaine." *Thomas*, 690 F.3d at 367-68. This Court cannot reconsider the Fifth Circuit's ruling on this issue. *See Kalish*, 780 F.2d at 508 ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions.") (citing *Jones*, 614 F.2d at 82); *Espinoza v. United States*, Criminal Action No. L–8–2031–1, Civil Action No. L–11–61, 2012 WL 3100465, at *5 (S.D. Tex. July 30, 2012) (rejecting argument that counsel rendered ineffective assistance by failing to object to jury

instructions where prior ruling of Court of Appeals precluded court from finding that petitioner suffered prejudice from counsel's allegedly deficient performance). The evidence presented at trial was sufficient to convict Petitioner, so Petitioner's arguments predicated on the insufficiency of the evidence must fail.

### 8. Trial Counsel's alleged failure to object to the Court's drug quantity determination at sentencing

Petitioner argues that Trial Counsel rendered ineffective assistance by "failing to object and argue that the [Court's] finding that [P]etitioner was accountable for 15 kilograms of cocaine violates [P]etitioner['s] right to a jury determination on all facts legally essential to the punishment." Mot. 33.

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court ruled that any fact, other than the fact of a prior conviction, that increases the penalty for a federal crime beyond the prescribed statutory maximum must be submitted to a jury, charged in an indictment, and proven beyond a reasonable doubt. *See* 530 U.S. at 490. In other words, a district court may not impose a sentence above the otherwise applicable statutory maximum solely on the basis of an aggravating factor found by the court by a preponderance of the evidence. *See id.*

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the *Apprendi* rule described above applied to the then-mandatory United States Sentencing Guidelines. 543 U.S. at 226-244. However, the *Booker* Court, deeming this result at odds with congressional intent, also excised the provision of the federal sentencing statute that made the Guidelines binding on sentencing judges. *Id*. at 245-68. The *Booker* decision therefore made the Sentencing Guidelines merely advisory. *Id*. at 245. With this provision excised, a court may *not increase the applicable statutory maximum* on the basis of a drug quantity not found by a jury

28

beyond a reasonable doubt, but the court *may* impose a *guideline* sentence *within the applicable statutory range* on the basis of facts found by the court by a preponderance of the evidence at the sentencing hearing. *See United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005). As a result, a sentencing judge, rather than a jury, may determine the total quantity of drugs involved in an offense by a preponderance of the evidence when calculating a defendant's guideline range. *See United States v. Hernandez*, 633 F.3d 370, 373-74 (5th Cir. 2011) (citations omitted); *Mares*, 402 F.3d at 519.

When calculating a defendant's guideline sentence, the court may consider as relevant conduct "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1) (2009).[7] Additionally, "in the case of a jointly undertaken criminal activity" such as a conspiracy, the court may consider "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" if those acts and omissions "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1) (2009). As a result, when calculating the guideline sentence for a defendant convicted of a drug offense, the sentencing court may hold the defendant "accountable for all quantities of contraband with which he [or she] was directly involved" as demonstrated by a preponderance of the evidence. *United States v. Ramos*, 545 F. App'x 301, 308 (5th Cir. 2013).

Notably, a sentencing court, when calculating a defendant's guideline sentence, may

---

[7] Because this Court sentenced Petitioner on September 30, 2010, the Court applied the 2009 Sentencing Guidelines, which were effective from November 1, 2009 to September 30, 2010. *See* PSR 12; *United States v. Ramos*, 509 F. App'x 317, 318 (5th Cir. 2013) (citing *United States v. Rodarte-Vasquez*, 488 F.3d 316, 322 (5th Cir. 2007)) (holding that a sentencing court should generally apply the version of the Sentencing Guidelines in effect at the time of sentencing).

adopt facts in a presentence investigation report "without further inquiry if the facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence." *United States v. Alford*, 142 F.3d 825, 832 (5th Cir. 1998) (citing *United States v. Puig-Infante*, 19 F.3d 929, 943 (5th Cir. 1994)). To prevent a sentencing court from adopting a presentence investigation report supported by an adequate evidentiary basis, the defendant must introduce rebuttal evidence that "demonstrate[s] that the information contained in the PSR is 'materially untrue, inaccurate or unreliable.'" *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999) (quoting *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998)). "Mere objections do not suffice as competent rebuttal evidence." *Parker*, 133 F.3d at 329 (citing *Puig-Infante*, 19 F.3d at 943). When a petitioner argues that his or her counsel rendered ineffective assistance by failing to introduce evidence to rebut a presentence investigation report, the petitioner must identify the missing evidence and demonstrate how that evidence casts doubt on the information set forth in the report. *See Palacios v. United States*, Nos. 3:12–CV–0788–D, 3:08–CR–0267–D (4), 2013 WL 2367774, at *5 (N.D. Tex. May 30, 2013); *Harris v. United States*, Civil No. 7:10–CV–039–D, Criminal No. 7:05–CR–026–D, 2013 WL 1294680, at *3 (N.D. Tex. Mar. 29, 2013); *Hernandez v. United States*, Nos. 3:11–CV–2482–N–BH, 3:06–CR–0192–N (7), 2012 WL 781955, at *4 (N.D. Tex. Feb. 9, 2012), *report and recommendation adopted by* 2012 WL 785931 (N.D. Tex. Mar. 9, 2012); *United States v. Moreno*, Criminal Action No. H-95-142-67, Civil Action No. H-03-1622, 2006 WL 2706772, at *2 (S.D. Tex. Sept. 18, 2006); *United States v. Alexander*, No. CRIM.A. 02-315, 2005 WL 1038603, at *3 (E.D. La. Apr. 22, 2005).

The Court did not commit any error when sentencing Petitioner. First, the Court correctly calculated Petitioner's maximum and minimum statutory sentence. The jury unanimously found beyond a reasonable doubt that the conspiracy offense that Petitioner committed involved five

kilograms or more of cocaine. Jury Verdict, ECF No. 210, at 1. Thus, based solely on the jury's

finding that the conspiracy involved five or more kilograms of cocaine, Petitioner faced a

statutory minimum sentence of ten years' imprisonment and a statutory maximum of life

imprisonment. *See* 21 U.S.C. §§ 841(b)(1)(A), 846. The Court sentenced Petitioner to 135

months' imprisonment – a sentence squarely within the statutory range given the jury's quantity

determination. *See* Am. J. 1. The Court therefore did not unconstitutionally increase Petitioner's

statutory sentence on the basis of facts not found by a jury. *See Apprendi*, 530 U.S. at 490.

Because the Court committed no error in this regard, Trial Counsel did not render ineffective

assistance by failing to object. *See Lopez v. United States*, Nos. EP–13–CV–35, EP–10–CR–

1937–KC–1, 2013 WL 6813418, at *7-8 (W.D. Tex. Dec. 20, 2013) (rejecting analogous

*Apprendi* challenge). For that reason, the Court likewise rejects Petitioner's argument that the

Court increased Petitioner's mandatory minimum statutory sentence on the basis of facts not

found by a jury in contravention of the Supreme Court's recent decision in *Alleyne v. United

States*, --- U.S. ----, 133 S.Ct. 2151, 2155 (2013). *See* Mot. 34, 36. Moreover, *Alleyne* is not

retroactively applicable to ineffective assistance claims brought in the context of a § 2255

motion. *See In re Kemper*, 735 F.3d 211, 212 (5th Cir. 2013).

 The Court also correctly calculated Petitioner's guideline sentence. The Court imposed a

within-guideline sentence on the basis of the information in the PSR. *See* Sentencing Hr'g Tr. 12.

The Court, as it was entitled to do, determined the total amount of drugs involved in the offense

by a preponderance of the evidence based on the facts enumerated in the PSR, which established

that the conspiracy involved a total of fifteen kilograms of cocaine. *See* PSR ¶¶ 11-13, 18, 23,

28, 31. This quantity determination was supported by an adequate evidentiary basis because it

was amply supported by evidence introduced at trial. *See* Trial Tr. 50, 52, 57, 60-61, 82, 86, 92,

102, 105, 132, 134, 139, 150, 196, 206, June 7, 2010; Trial Tr. 35-36, 86, 93, June 8, 2010. *See*

*also United States v. Valdez*, 453 F.3d 252, 263 (5th Cir. 2006) ("[T]he testimony at trial

provides an adequate evidentiary basis for the facts alleged in the PSR."). Because Trial Counsel

did not introduce evidence at the Sentencing Hearing to rebut the drug quantity described in the

PSR or in any way demonstrate that the PSR lacked an adequate evidentiary basis, *see*

Sentencing Hr'g Tr. 1-14, this Court was allowed to adopt the drug quantities therein as its own

findings when sentencing Petitioner. *See Alford*, 142 F.3d at 832 (citing *Puig-Infante*, 19 F.3d at

943). Petitioner does not identify any rebuttal evidence that Trial Counsel should have

introduced to prevent this Court from adopting the PSR. *See* Mot. 33-36; *Palacios*, 2013 WL

2367774, at *5; *Harris*, 2013 WL 1294680, at *3. Trial Counsel therefore did not render

ineffective assistance in failing to raise Petitioner's preferred objection to his sentence.[8]

### 9.   Trial Counsel's alleged failure to object to venue

Petitioner argues that the trial occurred in an inappropriate venue. According to

Petitioner, "[t]he charge and venue if any should have been made in Missouri, where the actually

alleged crime was allegedly undertaken." Mot. 29. Petitioner claims that holding the trial in the

Western District of Texas "undermin[ed] the essential fairness and integrity of a trial" because

the Western District of Texas is "noted for it's [sic] law enforcement misconduct." *Id*. Petitioner

therefore claims that Trial Counsel rendered ineffective assistance by failing to raise a venue

objection. *See id*.

Petitioner's argument fails for two reasons. First, Trial Counsel did indeed raise a venue

objection when he orally moved the Court to acquit Petitioner at trial. *See* Trial Tr. 158-61, 163,

---

[8] The Court also notes that although Trial Counsel did not raise the challenge Petitioner requests in the Motion, he did object to Petitioner's guideline sentence on other grounds. *See* ECF No. 244-3, at 1.

June 8, 2010 (adopting co-defendant's objection to venue). Therefore, Trial Counsel's representation was neither deficient nor prejudicial in this regard. *See Strickland*, 466 U.S. at 687.

Secondly, as the Fifth Circuit ruled on Petitioner's appeal, "[t]here was sufficient evidence from which a jury could conclude venue was proper in the Western District of Texas on the conspiracy count[]."[9] *Thomas*, 690 F.3d at 369. This Court has no power to reconsider the Fifth Circuit's ruling on this issue. *See Kalish*, 780 F.2d at 508 ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions.") (citing *Jones*, 614 F.2d at 82). Because venue was proper in this district, Trial Counsel did not render ineffective assistance by failing to object to it. *See United States v. Pomranz*, 43 F.3d 156, 158-162 (5th Cir. 1995) (rejecting ineffective assistance claim based on counsel's failure to raise venue defense where venue was proper in district where jury trial held); *Deville v. United States*, No. 6:98–cr–60049–15, 2008 WL 4298385, at *4 (W.D. La. Sept. 12, 2008) (rejecting ineffective assistance claim based on counsel's failure to seek change of venue).

### C.    The Motion to Amend

The Court now considers the Motion to Amend. By the Motion to Amend, Petitioner requests leave to amend the Motion pursuant to Federal Rule of Civil Procedure 15(a).[10] *See* Mot. to Amend 1-4. Specifically, Petitioner desires to add a claim that Trial Counsel rendered

---

[9] The Fifth Circuit did rule that venue was improper as to the attempt count, but the Motion only challenges the conspiracy conviction. *See Thomas*, 690 F.3d at 369-72.

[10] Although the Motion to Amend purports to be made pursuant to Federal Rule of Civil Procedure 15(b)(1), *see* Mot. to Amend 1, Rule 15(b) applies only to amendments made during and after a civil trial where the evidence presented is not within the issues raised in the pleadings. *See* Fed. R. Civ. P. 15(b)(1)-(2); *Ramsey v. Countrywide Home Loans, Inc.*, 424 B.R. 217, 226 (Bankr. N.D. Miss. 2009). The Court therefore construes the Motion to Amend as a motion made pursuant to Rule 15(a).

ineffective assistance by failing to object to this Court's jury instructions on venue. *See id.*

Federal Rule of Civil Procedure 15 governs the circumstances under which a party may amend its pleadings in a civil case. *See* Fed. R. Civ. P. 15. The rule is applicable to § 2255 proceedings. *See United States v. Saenz*, 282 F.3d 354, 356 (5th Cir. 2002) (citations omitted). "A party may amend its pleading once as a matter of course within . . . 21 days after serving it," or, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a court may deny leave to amend if doing so would be futile. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872-73 (5th Cir. 2000).

Because Petitioner filed the Motion to Amend outside the twenty-one day period established by Rule 15 and the Government has not filed its written consent to an amendment, Petitioner may only amend the Motion with this Court's leave. *See* Fed. R. Civ. P. 15(a)(2). The Court denies Petitioner leave to amend the Motion because Petitioner's proposed amendment would be futile for the reasons described below.

The venue instruction this Court gave the jury largely mirrors the Fifth Circuit Pattern Instruction and accurately states the applicable law.[11] *Compare* ECF No. 207, at 22, *with* Pattern

---

[11] The Court's venue instruction read as follows:

Now, some of the events that you have heard about happened in other places. There is no requirement that the conspiracy take place here in the Western District of Texas. But for you to return a guilty verdict on the conspiracy charge, the government must convince you that either the agreement, or one of the overt acts, took place here in the Western District of Texas.

Jury Instructions (Criminal Cases) § 1.18A (2012). *See also United States v. Garcia Mendoza*, 587 F.3d 682, 686 (5th Cir. 2009) (stating the law of venue as it relates to violations of 21 U.S.C. § 846). As noted above, "a district court does not err by giving a charge that tracks this Circuit's pattern jury instructions and that is a correct statement of the law." *Whitfield*, 590 F.3d at 354 (citing *Turner*, 960 F.2d at 464). Because the Court did not erroneously instruct the jury regarding the law of venue, Trial Counsel did not render ineffective assistance by failing to object to the venue instruction. *See Ramos v. United States*, 2012 WL 10921, at *28-29 (rejecting ineffective assistance claim predicated on counsel's alleged failure to object to jury instruction that mirrored Fifth Circuit's Pattern Jury Instruction); *Johnson*, 2011 WL 3208029, at *8 (same); *Rubio*, 2007 WL 1231678, at *5 (same). Because Petitioner's ineffective assistance claim predicated on the venue instruction would necessarily fail, the Court denies the Motion to Amend as futile. *See Stripling*, 234 F.3d at 872-73.

### D.    Evidentiary Hearing

Petitioner requests an evidentiary hearing on the issues posed by the Motion. *See* Mot. 15, 36; Reply 1-2, 6. 28 U.S.C. § 2255(b) provides that

> [u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be

---

Unlike all the other elements I have described, this is just a fact that the government only has to prove by a preponderance of the evidence. This means the government only has to convince you that it is more likely than not that part of the conspiracy took place here.

Remember that all the other elements I have described must be proved beyond a reasonable doubt. ECF No. 207, at 22.

Petitioner specifically challenges the Court's use of the phrase "for you to return a *guilty verdict* on the conspiracy charge," rather than merely "for you to return a *verdict* on the conspiracy charge." *See* Mot. to Amend 2; ECF No. 207, at 22. The Fifth Circuit Pattern Jury Instructions include the phrase "guilty verdict," rather than Petitioner's preferred wording. *See* Pattern Jury Instructions (Criminal Cases) § 1.18A (2012) ("[B]ut in order for you to return a *guilty verdict*, the government must prove by a preponderance of the evidence that either the agreement or an overt act took place in this district[.]" (emphasis added)). The Court therefore did not commit error by including the phrase "guilty verdict" in the venue instruction. *See Whitfield*, 590 F.3d at 354 (citing *Turner*, 960 F.2d at 464).

served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

For the reasons discussed above, the Motion, the Reply, and the files and records of the Case conclusively demonstrate that Petitioner is entitled to no relief, so no evidentiary hearing is necessary to rule on the Motion. *See Davis v. United States*, Nos. 3:07-CV-1995-P; 3:01-CR-0323-P (03), 2009 WL 3488052, at *9 (N.D. Tex. Oct. 28, 2009); *Peralta-Ramirez*, 2008 WL 4630369, at *11. The Court accordingly denies Petitioner's request for a hearing.

### E.      Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, Petitioner must obtain a certificate of appealability before appealing this Order. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires the petitioner to demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336. "A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument." *Peralta-Ramirez*, 2008 WL 4630369, at *12 (citing *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)). For the reasons stated above, jurists of reason would not debate the merits of any of Petitioner's claims, so the Court sua sponte denies Petitioner a certificate of appealability. *See id.* (citing *Alexander v. Johnson*, 211 F.3d at 898).

## III.    CONCLUSION

It is therefore **ORDERED** that the Motion, ECF No. 337, EP-09-CR-02453-KC-5, is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the corresponding civil action, EP-13-CV-298-KC, is hereby **DISMISSED WITH PREJUDICE.** The Clerk shall close the civil case. The Court shall issue a final judgment separately.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**SO ORDERED**.

**SIGNED this 2nd day of July, 2014.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE